# SUPERIOR COURT

State
vs.    }Ind.No.12390
Anthony J. Amaral

### RESCRIPT

#### January 31, 1925

HAHN, J.   Heard on defendant's motion for a new trial, based upon twelve grounds.

The first, second, fifth, sixth, seventh and eleventh grounds (and possibly the eighth and ninth) raise the question that the verdict is contrary to the law and the evidence and the weight thereof.   These grounds will hereinafter be considered together.

The third ground, that "The said evidence failed to show or prove according to law that the said Superior Court had the jurisdiction to try or hear said indictment," raises the question of venue, which was considered during the trial and at that time ruled upon by the court and the defendant's exception to the ruling of the court noted.

The fourth ground, that "The said defendant was greatly prejudiced and was unwarrantedly, illegally and unfairly disparaged before said jury and thereby was deprived of a fair and impartial trial," is not sufficiently specific to consider, and if the defendant intends to urge the fact that he was "unwarrantedly," illegally and unfairly disparaged before the jury, a motion to have had the case taken from the jury and an exception to the refusal of the court so to do would have been the proper method of raising this question.

The eighth and ninth grounds, which are as follows:

"8.   The said jury disregarded the charge of the court."

"9.   The jury did not follow the instructions of the court and give the said defendant the presumption of innocence until he was proven guilty,"

are without merit unless they may be considered to be portions of the group in which it is contended that the verdict is against the evidence.

The tenth ground is that "The atrociousness of the crime unduly influenced the judgment of the jury and prevented the defendant from receiving a fair and impartial consideration of the evidence presented in his defence."   While it is true that the atrociousness of the crime charged may cause a conviction upon insufficient evidence, in the case at bar there was nothing which showed that the evidence was not fairly and impartially considered.   In the selection of the jury, each prospective juryman was asked if he would be prejudiced by the heinousness of the offence in such manner as to prevent him from giving fair consideration to the evidence in the case and the answers of such jurors as were selected were that it would not so prejudice them and that they could weigh the evidence fairly.   The statements of the jurymen that they would not be influenced by the nature of the offence and the fact that a defendant accused of committing an atrocious crime must stand trial, exactly as one accused of a lesser offence, renders this ground untenable, provided the verdict is based upon sufficient evidence. A conviction upon insufficient evidence may in itself indicate prejudice.   The question of the sufficiency of the evidence will be hereinafter considered.

The twelfth ground is based upon the discovery of new and material evidence and has been presented to this court in the form of affidavits which are on file and which will be considered after a discussion of the various ground in which it is contended that the verdict is against the law and the evidence.

In considering the ground that the verdict is against the law and the evidence and the weight thereof, it is

necessary to refer in some detail to the evidence presented to the jury..

The indictment charges that Anthony J. Amaral on the 22nd day of April, 1924, killed by strangulation Clementine Cosmo, a girl between the age of nine and ten years. The evidence produced by the State to substantiate the allegations of the indictment may be divided into three parts; first: the presence of the defendant in East Providence, Providence and in Pawtucket, on the 22nd day of April somewhat previous to the time of the murder of Clementine Cosmo; second: the finding of the body of Clementine Cosmo and the chain and ring (State's Exhibit 25), and the various circumstances attendant upon the finding of the same; third: circumstances generally corroborating the State's case.

The State offered evidence tending to show that about noon of the 22nd of April, 1924, the defendant was in East Providence; that previous to going to East Providence he had at the junction of Mineral Spring avenue and Smithfield avenue purchased a tee, which was one of the constituent parts of a windshield cleaning device upon his automobile; that in East Providence, on North Broadway, near to her home, he took into his automobile Clementine Cosmo; that shortly after noontime he was seen with a girl dressed as was Clementine Cosmo at a point in Providence at or near the corner of Tockwotten and Ives streets; that from thence he proceeded to Pawtucket and was seen at the Chimes Restaurant, so-called; and that thereafterwards he drove back to the Jordan farm, where he was employed, and that during this ride from East Providence he committed an assault upon Clementine Cosmo and murdered her, and then or afterwards buried her so that he might destroy all evidence of his crime; Clementine Cosmo, according to the medical testimony, having come to her death from

one to two hours after eating her dinner at or about noontime on April 22nd.

The witnesses, Collins and Tracey, introduced by the State in regard to the presence of Amaral in East Providence on April 22nd, and the witness, William Marshall, who testified that he saw Amaral at Tockwotten and Ives street, and the witness, John Carney, who saw him at the Chimes Restaurant in Pawtucket, were carefully observed by this court as they were giving their testimony under direct and cross-examination, and in the opinion of this court the jury was justified in finding their testimony to be true and worthy of belief.

As to the happenings at the time of the exhumation of the body, being corroborative of other elements in the State's case, the State presented testimony to the effect that after the discovery of the body of Clementine Cosmo on April 27th there was found entangled in her hair a white metal ring which, with a chain, forms State's Exhibit 25; that such a chain and ring had been given to the defendant by the witness, Brennan, some time before, and that by reason of a certain cutting or change in the shape and length of the wire in the ring, the witness, Brennan, identified the ring as the one which formed a part of the device which he had given to the defendant. It was not denied by the defendant that he had received a chain and ring from Brennan, but he accounted for it in a manner which, if true, rendered it absolutely impossible for it to have been at the grave. However, there is no question in the mind of the court that Exhibit 25 was found entangled in Clementine Cosmo's hair, and when defendant, acting as interpreter at the time of the exhumation (and at that time not suspected of being implicated in the crime), was requested to ask the father of Clementine Cosmo (who could not speak English), whether he

recognized the ring and chain, it hardly seems possible that the witnesses for the State who say that Amaral returned the answer that it was one of his (Cosmo's) child's toys or playthings, would be in error or have invented such an answer, Cosmo testifying that Amaral did not ask about the ring and he said nothing about it. This answer in itself, if made, and the jury had the right to find that such answer was made, would be clearly in corroboration of the fact that defendant knew that the presence of the ring in the child's hair was a link which might connect him with the murder, and, knowing this, desired to escape the almost conclusive effect of its presence on the child's body.

As to other circumstances corroborative of the State's case. The testimony of George T. Knowles and Elsie T. Knowles, his daughter, with reference to the presence of the defendant at the Knowles' gasoline station during the day of April 22nd.

They were subjected to a thorough cross-examination in regard to the matter and as to the fact of defendant's presence at the gasoline station. They were entirely disinterested, apparently appreciated the effect of their testimony upon the defendant and yet they gave it clearly and without equivocation. The jury was justified in believing their testimony.

So with regard to the blood spot on the mat of the automobile (Exhibit 21). An inspection of the mat shows a dark discoloration at about the center of the mat, small portions of which were removed by the experts for the purpose of making the analytical test necessary to determine the kind of blood which formed the discoloration. It will not be necessary in this rescript to set forth in detail the defendant's explanation of the presence of the blood spot in his machine.

It seems probable that had the mat been spotted with blood in the manner stated by defendant, there would have been more than one spot. His first explanation (according to the testimony of the State's witnesses) as to the blood being caused by some meat which had been purchased for a dog, and his later explanation, fully justified the jury in the belief that the second explanation was false, and given for the reason that during the night the defendant had decided that the authorities might be able to determine the difference between human and other blood, and to protect himself against the result of an analysis he invented the story of having a woman in the automobile and of the various acts which he alleged were committed on the night of April 10th which might have been the cause of the blood spot. In this connection it may be said that while defendant and Farnum Jordan identified one of the State's witnesses as the woman who was with the defendant on April 10th and defendant connected her presence in the automobile with the blood spots, the testimony of this witness that she was not with the defendant or at the Jordan farm on April 10th was much more convincing and was given in a manner carrying conviction that she was unjustly accused.

The wheel tracks of the defendant's automobile, with a peculiar right rear tire, and various actions of the defendant on the night of April 22nd with regard to driving up the hill leading to the grave of Clementine Cosmo for the purpose, as he said, of viewing or listening to another automobile party parked in the vicinity, while not directly corroborative of guilt, are not easily harmonized with the theory of innocence. The defendant's alleged reason for driving up the road leading to the grave is not convincing, and to the average mind this act indicated some other purpose. Whether to obliterate wheel

tracks theretofore made by defendant's machine or otherwise, it is difficult to state, but to this court the testimony of the defendant and the witness, Rigby, who was with him, regarding this ride, is also utterly and absolutely unsatisfactory.

Further corroborative testimony introduced for the State was in regard to the clothing of the defendant and the method of washing the same after April 22nd.

The jury probably considered and had a right to consider as further elements in regard to the case the proximity of the Jordan farm to the place of burial, the acquaintance of the defendant with Clementine Cosmo, and the fact that Clementine Cosmo willingly entered an automobile driven by a man of defendant's type, said automobile having rear windows in the top similar to defendenat's as testified to by the witness, Isabella R. McConnell. The similarity of the handkerchief with which Clementine Cosmo was strangled to those found in defendant's possession at the time of his arrest was a circumstance to be considered. These all may be considered as having weight in conjunction with the other evidence in leading the minds of the jury to. the conclusion of guilt.

The defence was an alibi, testimony of defendant and other witnesses being offered to prove that the defendant did not leave the Jordan farm during the day of April 22nd, and was present on the farm at noontime on that day, eating his dinner, summoning others to their dinner and attending to various matters on the farm, including such work as might be performed on a rainy day, namely, setting glass in brooder house windows which were in the cellar. The testimony of the defendant, of Elisha and Farnum Jordan, and of their mother, Sarah S. Jordan, was presented to the jury in regard to this aspect of the case. These witnesses were before the jury and their testimony was brought out by thorough direct and cross-examination, with the result that it was for the jury to determine whether they were telling the truth or otherwise. Of course, if the defendant was on the farm at noontime of April 22nd, he could not have been at the various places suggested by the witnesses for the State. On this issue it was purely a question of fact. To the court the testimony of Elisha and Farnum Jordan was not convincing. It seemed to show an effort, for some reason best known to themselves, to shield and protect the defendant from the punishment which should come to one guilty of the offence charged. The cross-examination brought this matter out quite clearly, and the jury were fully justified in believing or disbelieving the Jordans as they saw fit. As to the testimony of Mrs. Sarah S. Jordan, the mother of Elisha and Farnum Jordan, an estimable woman, in poor health, and probably with every desire to tell the truth, her statement in regard to the tee (Exhibit H), which she said was shown to her on Monday the 21st, as compared with the testimony of George T. and Elsie T. Knowles, would certainly justify the jury in believing that Mrs. Jordan was mistaken, and that what she thinks she saw on the 21st she probably saw on the 22nd. At any rate, it was for the jury to say, and it was for the jury to determine which was true.

The various grounds alleging that the verdict is against the law and the evidence and the weight thereof are not sustained.

As to the newly discovered evidence, the testimony of Rudolph P. Cook, in his affidavit filed by the defence, is contradicted by his subsquent affidavit filed by the State; and so the testimony of the witness Collins, that he was working for Mr. Cook on the 22nd day of April, is substantiated rather than disproved by the newly

discovered evidence.

As to the affidavit of Rigby. .If the testimony of William J. Rigby had been given frankly, freely, and with an apparent desire to tell the truth, his evidence as varied by his last affidavit might be worthy of serious consideration, but in court it was very clear from the beginning to the end that he was trying to shield his friend Amaral without contradicting his previous statements to the authorities, and the various affidavits in answer to that of Rigby show what he said in regard to the absence of Amaral from the farm on April 22nd. This testimony is cumulative, would not be believed by any jury which might in the future be called upon to try the case, and its weight is absolutely and entirely destroyed by the testimony given during the trial and the affidavits of numerous witnesses showing contrary statements by Rigby. Therefore the ground of newly discovered evidence is not in any manner sufficient to warrant a re-trial of this case, and while it may also be objectionable from many technical standpoints, this court has taken it at its full value if presented to another jury and has found that it would not in any manner be sufficient to cause the verdict to be different from that rendered. ·

The trial of this case lasted from December 1st until and including December 21st. The jury was kept together during the entire time at great expense to the State and for the purpose of being certain that comments in regard to the case whether by the press or individuals, should not come to their attention, so that they might give the case fair consideration without an possibility of the opinions of individuals outside the jury in any manner influencing their verdict. The defendant, being without funds, this court gave him the counsel of his own selection, and thereafterwards another attorney, who has been counsel in many important criminal cases. Defendant was also authorized to retain at the expense of the State investigators, experts, witnesses, and all necessary services, so that defendant had every consideration and every facility for the proper presentation of his defence that he could have had had he been of substantial means. Every witness in giving his or her testimony was carefully observed by this court, as were the members of the jury, and particularly at the time of the presentation of some evidence too disgusting to here detail, and in no instance did the jury by act or appearance of any member of the panel seem to consider the evidence presented in any but a fair and impartial manner.

The verdict is based upon sufficient evidence and is not contrary to the law, the evidence or the weight thereof. The defendant had a fair and impartial trial. No prejudice against him was shown.

Motion for a new trial denied.

For State: George Hurley and John H. Nolan.

For Defendant: Walter I. Sundlun and William G. Troy.